FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 AUG 10 AM 8:18

CLERK _L. Flanders_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| TERRANCE LYNN WILCHER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 104-169 |
| | ) | |
| ROSE WILLIAMS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Terrance Lynn Wilcher ("Petitioner") brought the above-styled petition for a writ of habeas corpus against Respondent Rose Williams ("Respondent") pursuant to 28 U.S.C. § 2254. For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that Petitioner's motion for an evidentiary hearing (doc. no. 13) be **DENIED** as **MOOT**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

On December 29, 1998, a Richmond County, Georgia, grand jury returned an indictment charging Petitioner with sexual exploitation of children (Counts 1, 3, 6-12, & 14-20), enticement of a child for indecent purposes (Counts 2, 4), and child molestation (Counts 5, 13). Resp.'s Ex. 5, pp. 68-79. On March 26, 1999, Petitioner pled guilty to Counts 1, 3, and 6-12 of the indictment. Id. at 85, 87. As a factual basis for the plea, the prosecutor provided that upon Petitioner's return from Acapulco, Mexico, he was detained by the United

States Customs Service in Dallas, Texas, and child pornography was found in his luggage. Resp.'s Ex. 5, pp. 96-99. A search warrant was later executed at Petitioner's home and pornographic material was discovered, including photographs and videotapes of Petitioner's victim. Id. Thereupon, the case was turned over to Richmond County authorities, who indicted Petitioner based on this wealth of material evidence. Following a formal plea colloquy, the Richmond County Superior Court accepted Petitioner's plea and sentenced him to twenty (20) years of imprisonment as to Counts 1, 3, and 6, to run consecutively, and twenty (20) years of imprisonment as to Counts 7-12, to run concurrently. Resp. Ex. 5, p. 85. The remaining counts were dismissed by an order of *nolle prosequi*. Id. No direct appeal or motion to withdraw plea was made.

On December 14, 1999, Petitioner filed a *pro se* state habeas petition in the Superior Court of Mitchell County, Georgia. Resp.'s Ex. 1, p. 1. Following an evidentiary hearing at which Petitioner's plea counsel testified, the state habeas court denied relief on December 19, 2002. Resp.'s Ex. 2, p. 5. Because Petitioner did not receive a copy of the order denying relief until after the time in which to seek appellate review had expired, the state habeas court granted Petitioner an out-of-time appeal; the Georgia Supreme court later denied Petitioner's application for a certificate of probable cause to appeal on March 29, 2004. Resp.'s Exs. 3, 4. Petitioner then timely executed the instant federal petition on October 24, 2004. (Doc. no. 1, p. 9).

Petitioner, who has filed two (2) separate petitions and an "amendment," along with a 115-page brief in support, brings a veritable cornucopia of claims. (See doc. nos. 1-3, 11).

However, they can be condensed as follows:[1]

>    (1) Petitioner's counsel was constitutionally ineffective because he failed to: (a) "challenge the [prosecutor's] presentation of the case," (b) advise Petitioner of his right to withdraw his guilty plea, (c) withdraw Petitioner's guilty plea when the prosecutor violated the plea agreement by seeking the maximum sentence available, (d) challenge the introduction of evidence regarding unrelated charges, (e) challenge the introduction of certain photographs, (f) file a meritorious motion to suppress certain evidence, (g) conduct an investigation or interview any witnesses before advising Petitioner to plead guilty, (h) object to Petitioner's sentence on double jeopardy grounds, (i) ensure that Petitioner received a "preliminary hearing," (j) challenge the credibility of the State's witnesses, or (k) ensure that Petitioner had a "speedy trial."
>    (2) Counsel coerced Petitioner to perjure himself and to plead guilty.
>    (3) Counsel misled Petitioner regarding the anticipated testimony of certain witnesses.
>    (4) Petitioner's plea was neither knowing, understanding, nor voluntary.
>    (5) Petitioner was promised leniency (which he did not receive) in exchange for his cooperation with certain federal investigations.
>    (6) The state habeas court did not afford Petitioner a "full and fair hearing" and its decision was not based on "adequately developed" facts.

(Doc. no. 1, pp. 10-14; doc. no. 3, pp. 10-72; doc. no. 11, p. 1). In response, Respondent maintains that the entire petition lacks merit and should be denied. (Doc. nos. 7-8). The Court resolves the matter as follows.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which

---

[1] The Court specifically notes that the list of claims herein is by no means exhaustive. Moreover, the Court has no intention of addressing each of Petitioner's claims in explicit detail--it suffices to say that those claims not specifically listed or discussed have been considered and found to be devoid of merit. See, e.g., United States v. Northside Realty Assoc., Inc., 474 F.2d 1164, 1170 n.5 (5th Cir. 1972) ("Courts need not indulge in exegetics, or parse or declaim every fact and each nuance or hypothesis . . . failure to mention each and every specific item . . . in no way indicates that they were not considered.")(citations omitted).

3

became law on April 24, 1996, includes amendments to Chapter 153 of Title 28, codified at 28 U.S.C. §§ 2244 & 2253-2255, and amendments to Chapter 154 of Title 28, codified at 28 U.S.C. §§ 2261-2266 that are applicable to Petitioner's application for federal habeas relief. According to 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court interpreted § 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362, 404 (2000). The Supreme Court explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) *"contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,"* or (2) *"involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."*

<u>Id.</u> at 404-05.

The Eleventh Circuit has explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that

4

reached in a Supreme Court case.

> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. Notably, an "unreasonable application" is an "objectively unreasonable" application.

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (internal citations omitted).[2] In sum, the writ of habeas corpus may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, § 2254(e)(1) sets a highly deferential standard of review for state court factual determinations. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001) (citations omitted); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir.

---

[2]As to the analysis of the "unreasonable application" standard, the Supreme Court has explained:

> Stated simply, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. The federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case.

Williams, 529 U.S. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (finding application of Supreme Court precedent to be unreasonable requires more than an incorrect or erroneous state court decision; it must be "objectively unreasonable").

5

2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Moreover, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000).

With these basic principles in mind, the Court now turns its attention to the instant petition.

### III. DISCUSSION

#### A. Alleged Denial of "Full and Fair Hearing" By State Habeas Court

First, it should be noted that, with the exception of his claim that the state habeas court denied him a "full and fair hearing," Petitioner properly presented each of his claims to the state habeas court, which rejected them on the merits. See Resp.'s Exs. 1-2, 6. Before addressing Petitioner's other substantive claims, the Court notes that Petitioner's complaints regarding his state habeas proceedings do not present a cognizable basis for federal habeas relief.

Petitioner alleges that he was denied a full and fair hearing in the state habeas court because the court adopted a proposed order "drafted and submitted" by "the State's Attorney" as its own final order denying relief, and that this adoption was procedurally improper under state law. (Doc. no. 12, pp. 1-2). As questions of pure state law do not raise issues of constitutional dimension cognizable for federal habeas corpus review, this ground of the petition fails to state a claim for federal habeas corpus relief. See Estelle v. McGuire,

502 U.S. 62, 67-68 (1991). Furthermore, as a general rule, alleged infirmities in state habeas proceedings do not state an independent claim for federal habeas corpus relief. See Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (*per curiam*). As the Eleventh Circuit recently explained:

> In Spradley v. Dugger, we held that where a petitioner's claim goes to issues unrelated to the cause of petitioner's detention, that claim does not state a basis for habeas relief. 825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims as to errors at a hearing on the petitioner's 3.850 motion); see also Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir.1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings"). Therefore, while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief. See Spradley, 825 F.2d at 1568.

Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004). Thus, Petitioner is not entitled to federal habeas corpus relief on his allegations concerning the conduct of his state habeas proceedings.

**B.  Involuntary Plea, Ineffective Assistance of Counsel and Other Substantive Claims.**

In essence, Petitioner argues that his plea was involuntary and that he would not have entered it but for the incompetent (or unethical) conduct of counsel. Thus, the bulk of Petitioner's claims concern his counsel's alleged ineffective assistance. Such claims are analyzed under the two-prong test set forth in Strickland v. Washington, (1984). The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said

7

that the result reached by the state habeas court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)).

Under the first prong of the Strickland standard, Petitioner must show that his counsel's performance was deficient in that it fell below an "objective standard of reasonableness" considering all the circumstances at the time of counsel's conduct. See id. at 687-92. Nonetheless, the Court's scrutiny of counsel's performance must be "highly deferential," and the Court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. In this regard, the Court must determine whether counsel's performance was within "the wide range of professionally competent assistance," so as "to make the adversarial testing process work in the particular case." Id. at 690. However, there is a strong presumption that counsel provided "reasonable professional assistance." Id. at 689. For example, decisions concerning which witnesses to interview and call to testify, as well as which trial motions to make, are all matters of trial strategy which are entitled to a "heavy measure of deference." Id. at 691.

Under the second prong, the Court must determine whether the deficient performance actually prejudiced Petitioner's case. To satisfy the prejudice prong of the test, "[t]he

defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In the context of a guilty plea, the Court must inquire as to whether counsel's performance affected the outcome of the plea process. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). That is, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. In setting forth that standard, the Court emphasized the "fundamental interest in the finality of guilty pleas." Id. at 58. Therefore, to succeed in his federal habeas corpus challenge to his state court conviction via a guilty plea entered on the advice of counsel, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59. With these basic principles in mind, the Court now turns its attention to the substance of Petitioner's claims regarding his plea and ineffective assistance of counsel.

As noted, in his state habeas case, Petitioner argued that his plea was involuntary and that he had received ineffective assistance of counsel. The facts, as adduced at the evidentiary hearing on Petitioner's state habeas corpus petition, can be summed up briefly. Petitioner was represented by Mr. Leon Larke ("Larke") at his guilty plea proceedings. Resp.'s Ex. 5, p. 49. According to the transcript from the state habeas proceedings, Larke had been a member of the Georgia Bar in good standing since 1980, with criminal defense work comprising "[a]bout 70 percent" of his practice. Id. at 49-50. Larke estimated that in

twenty years of practicing law, he had handled "about 1,500" criminal cases. Id. at 57.

Once appointed to represent Petitioner, Larke met with Petitioner "numerous times" and made sure Petitioner "understood the charges." Id. at 53. Larke also went over the State's evidence with Petitioner, which included numerous exhibits, including photographs. Id. at 27. Larke also filed various pretrial motions. First, Larke filed a motion to suppress the physical evidence obtained during the search of Petitioner's residence, which was denied. Id. at 50, 61-62. He also filed a motion challenging the admission of the State's "similar transaction" evidence, which was also resolved against Petitioner. Id. at 50.

Next, Larke explained that, because of the strength of the State's evidence, he had urged Petitioner to plead guilty, and noted that the eleven (11) counts against Petitioner that were dismissed as a part of Petitioner's plea agreement would have subjected Petitioner to a sentence exposure of "280 years." Id. at 18-19, 33. However, as Petitioner admitted during the hearing on his state habeas case, Larke never made any suggestions, promises, or guarantees in regard to what sentence the judge would actually impose. Id. at 48. Nevertheless, on Larke's advice Petitioner decided to plead guilty, and the two went over the plea agreement and a "plea questionnaire" together. Id. at 50-51. Larke informed Petitioner of his sentencing exposure under the plea agreement, and Petitioner filled out the plea questionnaire and signed it in Larke's presence. Id. at 22-23, 42, 50-51. In fact, Petitioner initialed each question on the form, thus signifying that he read and assented to all of its contents. Id. at 42, 44, 51. The two also went over a "waiver of rights" form, which Petitioner then also signed. Id. at 21.

In addition, Larke specifically informed Petitioner of his right to withdraw his plea,

10

but explained that Petitioner would have no absolute right to do so after the trial judge entered sentence. Id. at 23. Throughout Larke's representation, Petitioner never expressed any dissatisfaction with Larke's representation. In fact, a few months after being sentenced, Petitioner even sent Larke a "letter thanking [him] for the nine months of hard work that [Larke] put into representing him." Id. at 54, 62.

Also noteworthy, Larke specifically denied ever instructing Petitioner on how to respond to questions in the plea questionnaire or before the trial judge. Id. at 51. Next, Larke denied that Petitioner ever gave him a "list of witnesses or people to track down;" however, Larke did interview those witnesses listed on the indictment Id. at 62-63. That having been said, Larke chose not to interview Petitioner's victim or his mother, noting that it seemed unnecessary because Petitioner was "moving towards entering a plea." Id. Larke also stated that Petitioner had made it clear that he could not contradict the victim's proposed testimony. Id. at 63-64.

In its order denying habeas relief, the state habeas court accurately summarized the testimony adduced at the hearing (as discussed above) and found: 1) Petitioner was a "very intelligent man" who understood the proceedings against him; 2) Larke informed Petitioner of all the rights he was relinquishing by pleading guilty; 3) Larke never instructed Petitioner regarding how to answer questions; 4) Larke made no promises regarding Petitioner's sentence; and 5) Petitioner was sentenced in accord with the plea agreement. Resp.'s Ex. 2, pp. 3-6. Next, explicitly relying on transcripts of Petitioner's guilty plea proceeding[3] and its

---

[3]Besides signing the plea questionnaire and a waiver of rights form, Petitioner indicated under oath at his sentencing: 1) he wanted to plead guilty to nine (9) counts of sexual molestation of children; 2) he understood the plea agreement; 3) no one made any

11

own evidentiary hearing, the state habeas court determined that, under Boykin v. Alabama, 395 U.S. 238 (1969), Petitioner had entered into his plea knowingly and voluntarily. Id. at 7-8. Applying Strickland and Hill, the state habeas court went on to determine that Petitioner had not received ineffective assistance of counsel:

> Petitioner's contentions in regard to ineffective assistance of counsel are without merit and provide him no basis for relief. The standard established for claims based on ineffective assistance of counsel under the Sixth Amendment is a two-pronged test. The Petitioner must show that: (1) in light of all the circumstances the identified acts or omissions of counsel were outside the range of professionally competent assistance; and (2) there must be a reasonable probability that but for counsel's unprofessional errors, the results of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668 (1984); Hill v. Lockhart, 474 U.S. 52 (1985)(holding that the Strickland test for evaluating ineffective assistance of counsel claims applies equally to guilty plea challenges).
> This Court has carefully examined the performance of Petitioner's counsel in the context of Petitioner's guilty plea and finds that Petitioner has failed to satisfy either prong of the Strickland standard. Petitioner has failed to offer any evidence of attorney error and/or actual prejudice.
> The Court finds that counsel acted properly and, in fact, conducted a thorough investigation [and] advise[d] Petitioner of all of his various constitutional rights prior to the entry of his plea. The record in this case reveals that counsel provided effective assistance. . . . [C]ounsel's conduct [fell] within the wide range of reasonable, professional conduct . . . Consequently, Petitioner's contentions with regard to ineffective assistance

---

threats or promises to induce the plea; 4) he understood that he was waiving his rights as explained to him by his lawyer and the trial court; 5) even understanding his sentencing exposure as explained by the trial court, he still wanted to plead guilty; 6) he understood the charges alleged in the indictment, as explained by the trial court; and 7) he was satisfied with his lawyer's representation. Resp's Ex. 5, pp. 89-95. The trial court also specifically afforded Petitioner a chance to address the Court, whereupon Petitioner mentioned various facts he believed the court should take into account, but acknowledged his guilt and apologized. Id. at 101-05. As if this were not enough, Petitioner admitted at the hearing before the state habeas court that his answers to questions at his guilty plea colloquy and sentencing were truthful. Id. at 47-48. The state habeas court explicitly relied upon Petitioner's testimony at sentencing and at the evidentiary hearing in concluding that Petitioner's plea was voluntary. Resp.'s Ex. 2, pp. 4-7.

of counsel provide him no basis for relief.

Id. at 8-9.

This Court finds that the conclusions of the state habeas court are supported by the overwhelming evidence in the record and that the standards enunciated in Boykin, Strickland, and Hill were applied appropriately by the state court. Simply put, it is clear that Larke, a seasoned criminal attorney, pursued Petitioner's case conscientiously, challenged the admission of the State's evidence,[4] adequately apprised Petitioner of his rights, and ensured that Petitioner's plea was in his best interest. The Court also notes that, while Larke specifically noted Petitioner's cooperation with a federal investigation regarding child pornography at the sentencing hearing, there is no indication that Larke, the prosecutor, or the trial judge ever promised Petitioner a more lenient sentence as a result of that assistance. Resp.'s Ex. 5, pp. 99-100. In sum, there is no reason to suppose that any of Larke's decisions were unreasonable, much less that Petitioner would not have pled guilty but for some nefarious or incompetent action taken by Larke.

Moreover, Petitioner has not shown that he suffered any prejudice by pleading guilty rather than going to trial. In other words, Petitioner has not shown that Larke's estimation of the State's evidence was wrong or that Petitioner would not have been convicted if he had gone to trial. In fact, the record indicates that Petitioner's sentence exposure would have been much greater if he had proceeded to trial and that a plea was in Petitioner's best interest.

---

[4]It should be noted that despite his voluminous argument otherwise, Petitioner has presented to the Court no reason to suppose that Larke acted unreasonably by failing to pursue a "meritorious" argument for the exclusion of any of the State's evidence.

13

Under these facts, no prejudice has been shown and Petitioner's claims lack merit. See, e.g., Jones v. White, 992 F.2d 1548, 1557-58 (11th Cir. 1993).

In addition, the Court points out here that the state habeas court's reliance upon the transcript of Petitioner's plea hearing was completely proper and indeed dispositive of Petitioner's case. "Solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Petitioner would have the Court ignore his own sworn statements--such will not do. In sum, Petitioner's claims regarding his guilty plea are contradicted by the state record and utterly devoid of merit.

As Petitioner's plea was voluntary and he received effective assistance of counsel, his remaining claims are immaterial and need not be addressed explicitly. See Jones, 992 F.2d at 1556-57 ("This court has concluded that a reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea [] will be upheld on federal review." (internal citation and quotation omitted)). Simply put, despite voluminous briefing, Petitioner has come forward with no reason to second-guess the state court's findings or its conclusions of law regarding the voluntariness of his plea, and the instant petition should be denied.

C.   **No Entitlement to Evidentiary Hearing**

Accordingly, an evidentiary hearing is neither needed nor appropriate in this case. According to Rule 8 of the Rules Governing Section 2254 Cases, "[i]f the petition is not

14

dismissed at a previous stage in the proceeding, the judge after the answer and the transcript and record of state court proceedings are filed . . . shall . . . determine whether an evidentiary hearing is required." The Court will not conduct a hearing where the petitioner's proffered evidence has no effect upon the resolution of his claims.[5] Breedlove v. Moore, 74 F. Supp.2d 1226, 1233 (S.D. Fla. 1999) (habeas petitioner must show that "the proffered evidence would affect the resolution of the claim" before he is entitled to a hearing)(citing Bolender v. Singletary, 16 F.3d 1547, 1555 n.9 (11th Cir. 1994)); see also Stephens v. Kemp, 846 F.2d 642, 650-51 (11th Cir. 1988) (same). Therefore, as the record evidence affirmatively demonstrates that Petitioner's claims lack merit, Petitioner's motion for a hearing (doc. no. 13) should be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, the Court **FINDS** that Petitioner's stated grounds for relief are without merit. Accordingly, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that Petitioner's motion for an evidentiary hearing (doc. no. 13) be

---

[5]Here, Petitioner avers a hearing is needed to address his farcical claim that authorities mistakenly assumed that he was traveling to Mexico when in fact he was only frequenting Mexican restaurants in Augusta, Georgia. (Doc. no. 13, p. 2). The Court is also aware of Petitioner's claim that the prosecutor and trial court wrongly assumed that an innocent trip he took to Acapulco was made in furtherance of a child pornography scheme. (Id.). The matter of Petitioner's presence in Mexico and his purposes there was taken up at the sentencing hearing--where Petitioner argued that his trip was innocent--and again at the evidentiary hearing before the state habeas court. See Resp.'s Ex. 5, pp. 16-17, 103-04. These claims reflect little more than a belated attempt to dispute the evidence used as a factual basis for his plea. However, Petitioner gave up his right to a trial and to challenge the State's evidence against him. In short, these issues do not go to whether Petitioner's plea was entered knowingly and voluntarily, or whether he received ineffective assistance of counsel, and thus provide no basis for granting Petitioner an evidentiary hearing.

**DENIED** as **MOOT**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 10th day of August, 2005, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## Southern District of Georgia

WILCHER )

vs ) CASE NUMBER CV 104-169

WILLIAMS ) DIVISION AUGUSTA

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated 08/10/05, which is part of the official record of this case.

Date of Mailing: 08/10/05

Date of Certificate  [X] same date,  or _____

Scott L. Poff, Clerk

By: _____
Joe Howell, Deputy Clerk

Name and Address

TERRANCE LYNN WILCHER SERVED AT PRISON ADDRESS
CHAD ERIC JACOBS
PAULA K. SMITH

☐ Copy placed in Minutes
☐ Copy given to Judge
[X] Copy given to Magistrate